## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **ROBERT M. READ, on behalf of himself and all others similarly situated,** : | |
| : | |
| **Plaintiff,** : | 09 CV _____ |
| v. : | **CLASS ACTION COMPLAINT** |
| : | **JURY TRIAL DEMANDED** |
| **HEARTLAND PAYMENT SYSTEMS, INC., a Delaware Corporation,** : | |
| **Defendant.** | |
| _____/ | |

## CLASS ACTION COMPLAINT WITH INJUNCTIVE RELIEF SOUGHT AND DEMAND FOR JURY TRIAL

COMES NOW Robert M. Read ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, and in support of Plaintiff's Class Action Complaint, states as follows:

### INTRODUCTION

1.      Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(l), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons throughout the state of Florida whose private financial information was negligently, deliberately, and/or recklessly allowed to be stolen from Heartland Payment Systems, Inc. ("Defendant"), in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), Florida's Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA"), Fla. Stat. §§ 501.201, *et. seq.*, thirty-four (34) states' data breach notification statutes, and in violation of other common law causes of action. Defendant negligently, deliberately, and/or recklessly did not maintain reasonable procedures

#3865503 (144084.002)                                                    1

designed to limit the furnishing of this private financial information for the permissible purposes outlined under FCRA.  As a result of Defendant's negligent, deliberate, and/or reckless violations of FCRA, Plaintiff's and Class Members' Consumer Reports were stolen without the consent of Plaintiff and Class Members, and for no permissible purpose under FCRA.

2. Defendant's actions constitute violations of FCRA, Florida's Deceptive and Unfair Trade Practices Act, and thirty-four (34) states' data breach notification statutes, as well as common law negligence and breach of contract.

3. Plaintiff seeks damages suffered as a result of Defendant's practices, including but not limited to statutory damages, compensatory damages, and injunctive relief.

## PARTIES AND JURISDICTION

4. Plaintiff Robert M. Read is an individual and a citizen and resident of Florida.  Plaintiff Read's personal financial information relating to his Visa was compromised as a result of the data breach described herein.

5. Defendant Heartland Payment Systems, Inc. ("Heartland") is a corporation incorporated under the laws of the state of Delaware, and with its principle place of business located in Princeton, New Jersey.  At all times relevant to this complaint, Heartland transacted business throughout the states of New Jersey and Florida.

6. The Court has jurisdiction over the federal claim herein pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the state law claims herein under 28 U.S.C. § 1367.  Further, the Court also has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant. *See* 28

U.S.C. § 1332(d)(2)(A). The Court has personal jurisdiction over Defendant because it conducts substantial business throughout Florida.

7. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the acts giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

8. Heartland is a publically traded company that delivers credit/debit/prepaid card processing, payroll, check management and payments solutions to more than 250,000 business locations nationwide. Heartland employs nearly 3,000 employees in operations, sales, IT, marketing and administration.

9. Heartland handles over 4 billion transactions per year, making it one of the top five processors of payment transactions in the United States.

10. Heartland proclaims that its success is the result of "the combination of a superior long-term customer relationship sales model and its internally-developed, client-server based transaction processing platform." Heartland services many different consumer markets, including pay-at-the-pump gas stations, parking lots, retail stores, restaurants, school campuses, hospitality and community banks, auto repair facilities, convenience and liquor stores, and other professional service providers.

11. On January 20, 2009, Heartland issued a press release, disclosing for the first time that "in 2008," a security breach occurred within its processing system. Heartland's statement concluded that it believed the intrusion was contained.

12. Although the data breach allegedly occurred "in 2008," Robert H.B. Baldwin, Jr., Heartland's President and Chief Financial Officer stated that "[Heartland] found evidence of an intrusion **last week** and immediately notified federal law enforcement officials as well as the

card brands." (emphasis added). Due to the discrepancy between the press release and Mr. Baldwin, Jr.'s statement, it is unclear exactly when the data breach occurred.

13. Heartland concluded that consumers' personal financial information was stolen, including but not limited to credit card numbers, the names on credit cards, any expiration dates, and other information encoded onto the magnetic strip of each card ("Personal Financial Information").

14. Heartland's investigation uncovered malicious software that compromised data that crossed Heartland's network.

15. Heartland has created a website—www.2008breach.com—to provide information about the data breach, and advised consumers to "examine their monthly statements closely and report any suspicious activity to their card issuers."

16. Heartland admits that consumer information is "valuable". *See* December 2008 edition of *Payments Insider*, a publication by Heartland Payment Systems.[1]

17. Even with this knowledge, Heartland has failed to provide any notice to specific consumers regarding the data breach even though each and every consumer's identity is known to them.

18. Heartland's failure to provide notice to Florida consumers violates Fla. Stat. § 817.5681, and therefore constitutes a deceptive and unfair trade practice.

19. Upon information and belief, millions of consumers had their Personal Financial Information stolen from Heartland's computer system without Plaintiff's or Class Members' permission, or for any permissible purpose under the law.

---

[1] http://xm.etmxi.com/3689/support/articles.asp?i=1000&j=3689&e=1&c=1122&f%20=0&address.

20. Thus, Heartland improperly and illegally allowed Plaintiff's Personal Financial Information to be accessed by a third party.

21. The Personal Financial Information that was improperly disseminated has an independent, discernable market value, as similar financial information is frequently bought and sold.

## CLASS ACTION ALLEGATIONS

22. This action is brought on behalf of Plaintiff, individually and as a class action, on behalf of all persons throughout the nation whose private financial information was negligently, deliberately, and/or recklessly allowed to be stolen from the Heartland Payment Systems, Inc. as a result of the data breach ("the Class"). The Class does not include Defendant, or its officers, directors, agents, or employees.

23. The Class is composed of thousands of consumers, the joinder of whom in one action is impracticable. Disposition of the claims in a class action will provide substantial benefits to both the parties and the Court.

24. The rights of each member of the Class were violated in a similar fashion based upon Defendant's uniform actions.

25. Questions of law and fact common to the Class predominate over questions which may affect individual Class members, including, *inter alia*:

> a. whether Defendant is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f);
>
> b. whether Defendant violated FCRA by failing to properly maintain reasonable procedures designed to limit the furnishing of Consumer Reports to the permissible purposes outlined under FCRA;
>
> c. whether Defendant violated FCRA when it allowed third parties access to Plaintiff and Class members' Personal Financial Information;

    d. whether Defendant's conduct was deliberate and/or reckless;

    e. whether Defendant's conduct was negligent;

    f. whether Defendant's conduct constitutes an unfair and/or deceptive trade practice;

    g. whether Defendant was negligent in collecting and storing personal and financial information of consumers;

    h. whether Defendant took reasonable measures to safeguard consumers' Personal Financial Information;

    i. whether Defendant owed a duty to Plaintiff and/or the Class to protect their personal and financial information;

    j. whether Defendant breached its duty to exercise reasonable care in storing consumers' Personal Financial Information by storing that information on its computer systems and in its physical possession;

    k. whether Defendant breached a duty by failing to keep Plaintiff and Class members' Personal Financial Information secure;

    l. whether Defendant was negligent in failing to keep Plaintiff and Class members' Personal Financial Information secure;

    m. whether Plaintiff and members of the Class have sustained damages, and if so, what is the proper measure of those damages;

    n. whether statutory damages are proper in this matter;

    o. whether injunctive relief is appropriate in this matter;

    p. whether Defendant failed to properly give notice pursuant to Florida Statute § 817.5681, and all similar data breach notification statutes; and

26.     Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no interest that is antagonistic to or that irreconcilably conflicts with those of other members of the Class.

27.     Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiff's and the Class Members' claims.  Plaintiff and the members of the Class have suffered irreparable harm as a result of Defendant's deceptive, intentional, reckless, negligent, and unlawful conduct.  The damages suffered by individual Class Members may be relatively small, and thus few, if any individual class members can afford to seek legal redress on an individual basis for the wrong complained of herein.  Absent a class action, Plaintiff and members of the Class will continue to suffer losses as a result of Defendant's unlawful and negligent conduct.

## COUNT I

### INTENTIONAL VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

29.     Plaintiff re-alleges paragraphs 1 through 28 as if fully set forth herein.

30.     This is a claim for violation of the Fair Credit Reporting Act ("FCRA").

31.     FCRA requires the proper disposal or transfer of Consumer Information.  *See* 15 USCA §1681w; 16 C.F.R. § 682 *et. seq*.

32.     In compliance with FCRA, the FTC codified 16 CFR § 682 *et. seq*., which regulates the responsibility of companies and individuals who possess Consumer Information.  The purpose of the section was to reduce the risk of consumer fraud and related harms, including identity theft, created by the improper disposal of consumer information.  *See* 16 C.F.R. 682.2(a).

33.     "Consumer information" is defined as "any record about an individual, whether in paper, electronic, or other form, that is a consumer report or is derived from a consumer report.

Consumer information also means a compilation of such records. Consumer information does not include information that does not identify individuals, such as aggregate information or blind data." 16 C.F.R. § 682.1(b).

34.     The Personal Financial Information stolen was Consumer Information pursuant to 16 C.F.R. § 682.1 and FCRA.

35.     16 C.F.R. § 682.3 requires that "[a]ny person who maintains or otherwise possesses consumer information for a business purpose must properly dispose of such information by taking reasonable measures to protect against unauthorized access to or use of the information in connection with its disposal."

36.     "Disposal" is defined as "the…transfer of any medium, including computer equipment, upon which consumer information is stored."

37.     Under FCRA, a "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes; or any other purpose authorized under 15 U.S.C. § 1681b.  *See* 15 U.S.C. § 1681a(d)(1).

38.     Further, a "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing Consumer Reports to third parties, and which uses any

means or facility of interstate commerce for the purpose of preparing or furnishing Consumer Reports.  15 U.S.C. § 1681a(f).

39. Heartland is a Consumer Reporting Agency and/or possesses and transfers information derived from a consumer report.

40. Plaintiff and the other Class members are "consumers" or "persons," as defined and construed under FCRA.  *See* 15 U.S.C. §§ 1681a(b) & (c).

41. Defendant was required under FCRA to take reasonable measures to protect against unauthorized access while transferring the Consumer Information.  *See* 16 C.F.R. § 682.3.

42. In conscious disregard for the rights of Plaintiff and the class, Defendant deliberately and/or recklessly did not maintain reasonable procedures designed to protect against unauthorized access while transferring the Personal Financial Information.

43. As enumerated above, Defendant's deliberate and/or reckless conduct allowed third-parties to steal, or otherwise access, the Personal Financial Information without Plaintiff's or Class members' consent and for no permissible purpose under FCRA.

44. Defendant's conduct violated FCRA, and Plaintiff and Class members have been damaged by Defendant's deliberate and/or reckless actions.

45. As a result of Defendant's conduct, Plaintiff and Class members are entitled to actual damages sustained and statutory damages of not less than $100 and not more than $1,000, as well as the costs and attorney's fees in bringing this action.  15 U.S.C. § 1681n.

## COUNT II

### NEGLIGENT VIOLATIONS OF
### THE FAIR CREDIT REPORTING ACT

46. Plaintiff re-alleges paragraphs 1 through 28 as if fully set forth herein.

47.   This is a claim for negligent violation of the Fair Credit Reporting Act ("FCRA").

48.   FCRA requires the proper disposal or transfer of Consumer Information. *See* 15 USCA §1681w; 16 C.F.R. § 682 *et. seq*.

49.   In compliance with FCRA, the FTC codified 16 CFR § 682 *et. seq*. which regulates the responsibility of companies and individuals who possess Consumer Information. The purpose of the FCRA was to reduce the risk of consumer fraud and related harms, including identity theft, created by the improper disposal of consumer information." *See* 16 C.F.R. 682.2(a).

50.   "Consumer information" is defined as "any record about an individual, whether in paper, electronic, or other form, that is a consumer report or is derived from a consumer report. Consumer information also means a compilation of such records. Consumer information does not include information that does not identify individuals, such as aggregate information or blind data." 16 C.F.R. § 682.1(b).

51.   The Personal Financial Information stolen was Consumer Information pursuant to 16 C.F.R. § 682.1 and FCRA.

52.   16 C.F.R. § 682.3 requires that "[a]ny person who maintains or otherwise possesses consumer information for a business purpose must properly dispose of such information by taking reasonable measures to protect against unauthorized access to or use of the information in connection with its disposal."

53.   "Disposal" is defined as "the…transfer of any medium, including computer equipment, upon which consumer information is stored.

54.   Under FCRA, a "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's

credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes; or any other purpose authorized under 15 U.S.C. § 1681b.  *See* 15 U.S.C. § 1681a(d)(1).

55. Further, a "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing Consumer Reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing Consumer Reports.  15 U.S.C. § 1681a(f).

56. Defendant is a consumer reporting agency and/or possesses and transfers information derived from a consumer report.

57. Plaintiff and the other Class Members are "consumers" or "persons," as defined and construed under FCRA.  *See* 15 U.S.C. §§ 1681a(b) & (c)).

58. Defendant was required under FCRA to take reasonable measures to protect against unauthorized access while transferring the Personal Financial Information.  *See* 16 C.F.R. § 682.3.

59. Defendant was negligent in failing to maintain reasonable procedures designed protect against unauthorized access while transferring the Personal Financial Information.

60. As enumerated above, Defendant's conduct allowed third-parties to steal, or otherwise access, the Personal Financial Information without Plaintiff or Class members' consent and for no permissible purpose under FCRA.

61. Defendant's conduct violated FCRA, and Plaintiff and Class members have been damaged by Defendant's negligent actions.

62. As a result of Defendant's conduct, Plaintiff are entitled to actual damages to be proven at trial, as well as the costs and attorney's fees in bringing this action.  15 U.S.C. § 1681o.

## COUNT III

## VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
**(on behalf of Florida consumers only)**

63. Plaintiff re-alleges paragraphs 1 through 28 as if fully set forth herein.

64. This is a claim for violation of Florida's Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA"), Fla. Stat. §§ 501.201, *et. seq*.

65. FDUTPA provides that unfair methods of competition, unconscionable acts and practices, and unfair or deceptive acts or practices in the conduct "of any trade or commerce" are unlawful.  Fla. Stat. § 501.204.

66. Plaintiff and the other Class members are "persons" as defined and construed under the FDUTPA, Fla. Stat. §§ 501.201-501.213.

67. Defendant's conduct as alleged herein occurred in the course of trade or commerce.

68. Defendant's failure to maintain reasonable procedures designed protect against unauthorized access while transferring the Personal Financial Information constitutes an unfair or deceptive trade practice.

69. Further, Defendants' failure to properly give notice of the breach of the security of its computerized data system pursuant to Florida Statute § 817.5681 constitutes an unfair or deceptive practice.

70. Defendants' actions are deceptive and in clear violation of FDUTPA, entitling Plaintiffs to damages and relief under Fla. Stat. §§ 501.201-213.

71. Plaintiff and the proposed class membership were consumers within the meaning of FDUTPA.

72. Florida Statutes, Section 501.211 creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

73. Florida Statutes, Section 501.2105 provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein form the non prevailing party.

74. Florida Statutes, Section 501.213 provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

75. Florida Statutes, Section 501.203 (3)(c) states that a person has violated the Florida Deceptive and Unfair Trade Practices Act if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

76. Defendants practices constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

77. Defendants' acts constitute unconscionable, deceptive, or unfair acts or practices in violation of FDUTPA.

78. As a result of Defendants' unfair and deceptive trade practices, Plaintiff and the proposed class membership are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if they prevail.

79. Plaintiff and the other Class members suffered actual damages and ascertainable losses as a result of Defendant's deceptive and/or unfair trade practices, including but not limited to: expenses for credit monitoring, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## COUNT IV

## NEGLIGENCE

80. Plaintiff re-alleges paragraphs 1 through 28 as if fully set forth herein.

81. Defendant came into possession of Plaintiff's and the Class' Personal Financial Information and had a duty to exercise reasonable care in safeguarding and protecting such information from being compromised and/or stolen.

82. Defendant had a duty to timely disclose the fact that Plaintiff's and the Class' Personal Financial Information within its possession had been, or was reasonably believed to have been, compromised.

83. Defendant had a duty to protect Plaintiff's Personal Financial Information within its possession.

84. Defendant further had a duty to hire and supervise trustworthy employees as well as to have procedures in place to detect and prevent the theft or dissemination of Plaintiff's

Personal Financial Information. This breach of security and unauthorized access was reasonably foreseeable to Defendant.

85. Defendant, through its acts and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to maintain reasonable procedures designed to protect against unauthorized access while transferring the Personal Financial Information within its possession.

86. Defendant, through its actions and/or omissions, breached its duty to timely disclose the fact that Plaintiff's and the Class' Personal Financial Information within its possession had been, or was reasonably believed to have been, compromised.

87. But for Defendant's negligent and wrongful breach of its duties owed to Plaintiff and the Class, their Personal Financial Information would not have been compromised.

88. Plaintiff's and the Class' Personal Financial Information was compromised, viewed, and/or stolen as the proximate result of Defendant failing to exercise reasonable care in safeguarding such information by adopting, implementing, or maintaining appropriate security measures to protect and safeguard the private, non-public, personal and financial information within its possession.

89. Plaintiff and the Class suffered actual damages including, but not limited to: expenses for credit monitoring, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## COUNT V

## BREACH OF CONTRACT

90. Plaintiff re-alleges paragraphs 1 through 28 as if fully set forth herein.

91. Defendant came into possession of Plaintiff's and the Class' Personal Financial Information due to its contracts with the various entities to provide credit card, debit card, and

check processing in a secure manner. Defendant's contracts with the business entities were based upon its ability to protect such information. Plaintiff and the Class, who patronize these business entities, are intended third-party beneficiaries of these contracts.

92. Defendant did not safeguard and protect Plaintiff's and the Class' Personal Financial Information from being compromised and/or stolen. Indeed, Defendant allowed this information to be stolen.

93. Because Defendant allowed the disclosure of Plaintiff's and Class members' Personal Financial Information, and failed to safeguard and protect such information from being compromised and/or stolen, Defendant breached its contract with the various business entities to which Plaintiff and the Class are intended third party beneficiaries.

94. Plaintiff and the Class suffered actual damages including, but not limited to: anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## COUNT VI

### VIOLATION OF THE VARIOUS STATE DATA BREACH NOTIFICATION LAWS

95. Plaintiff re-alleges paragraphs 1 through 28 as if fully set forth herein.

96. Thirty-four (34) states require organizations to promptly notify consumers whose personal information has been exposed in a data breach: Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Louisiana, Maine, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Vermont, Washington, and Wisconsin.

97. Defendant came into possession of Plaintiff's and the Class' Personal Financial Information and had a duty to exercise reasonable care in safeguarding and protecting such information from being compromised and/or stolen.

98. Defendant had a duty to promptly disclose the fact that Plaintiff's and the Class' Personal Financial Information within its possession had been, or was reasonably believed to have been, compromised. *See* Fla. Stat. § 817.5681.

99. Defendant, through its actions and/or omissions, failed to promptly disclose the fact that Plaintiff's and the Class' Personal Financial Information within its possession had been, or was reasonably believed to have been, compromised.

100. Defendant's failure to promptly give notice of the breach of the security of its computerized data system violates the various statutes of the thirty-four (34) states.

101. Plaintiff and Class members request that an injunction be issued to require Defendant to comply with the data breach notification statutes for each of the above-referenced states.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully ask that the Court enter an Order:

> (a) certifying this matter as a class action with Plaintiff as Class Representative and designating Plaintiff's counsel as class counsel;
>
> (b) finding that Defendant purposefully and/or recklessly violated FCRA due to its failure to maintain reasonable procedures designed protect against unauthorized access while transferring the Personal Financial Information;
>
> (c) finding that Defendant negligently violated the FCRA due to its failure to maintain reasonable procedures designed to protect

      against unauthorized access while transferring the Personal Financial Information;

(d) declaring that Defendant's failure to maintain reasonable procedures designed protect against unauthorized access while transferring the Personal Financial Information constitutes an unfair or deceptive trade practice and enjoining such conduct;

(e) declaring that Defendants' failure to properly give notice of the breach of the security of its computerized data system pursuant to Fla. Stat. § 817.5681, and all similar data breach notification statutes constitutes an unfair or deceptive practice and entering an injunction to remedy such failure;

(f) finding that Defendant breached its contract to safeguard and protect Plaintiff and the Class' Personal Financial Information stored on its computer systems and in its physical possession;

(g) finding that Defendant was negligent in protecting Plaintiff and the Class' Personal Financial Information in its physical possession;

(h) requiring Defendant to pay for monitoring Plaintiff and other Class members' financial accounts as well as to compensate Class members for all damages that result from the unauthorized release of their private information;

(i) enjoining Defendant from actions which place consumers at a risk of future security breaches;

(j) requiring Defendant to pay actual damages sustained and/or statutory damages of not less than $100 and not more than $1,000;

(k) awarding actual and/or compensatory damages as provided by Fla. Stat. § 501.211(1);

(l) awarding the costs of this proceeding and attorney's fees, as provided by Fla. Stat. § 501.2105;

(m) awarding damages to Plaintiff and the Class under the common law theories alleged;

(n) requiring Defendant to pay Plaintiff's and Class members' reasonable attorneys' fees and costs of litigation;

(o) requiring Defendant to make Plaintiff and Class members whole;

(p) requiring Defendant to pay treble damages; and

(q) providing for such other legal and/or equitable relief as justice requires.

## JURY DEMAND

Plaintiff, on behalf of himself and the putative class, demand a trial by jury on all issues so triable.

Dated: January 26, 2009              Robert M. Read, individually and on behalf of all others similarly situated,

By:   /s/ Neil D. Overholtz
      Neil Overholtz
      Justin Witkin
      Aylstock Witkin Kreis & Overholtz PLLC
      803 N. Palafox Street
      Pensacola, FL 32501
      Telephone: (877) 810-4808
      *Attorneys for Plaintiff*

*Of Counsel:*

Lance A. Harke
Howard M. Bushman
Harke & Clasby, LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
Telephone: (305) 536-8220